**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| **v.** ) | Case No. 24-cr-00234-DLF |
| ) | |
| **LEWIS WAYNE SNOOTS,** ) | |
| ) | |
| ) | |
| **Defendant** ) | |
| ) | |

**DEFENDANT LEWIS WAYNE SNOOTS' <u>REPLY</u> TO THE GOVERNMENT'S SENTENCING STATEMENT**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

Comes now Defendant Lewis Wayne Snoots and respectfully submits this Reply to the Sentencing Statement filed by the United States, in advance of his Sentencing Hearing set for January 16, 2025.

A. <u>Offense Conduct</u>:

The entire sequence of events that is the subject of the Government's Sentencing Statement takes place over less than five minutes. Mr. Snoots entered the Lower West Terrace tunnel at 3:14:55 p.m., nearly 35 minutes after the clash between police and rioters in the tunnel had started at 2:42 p.m. He paused at the back of the crowd until 3:15:16 pm, at which time he pulled down the gasmask on his head and began to move forward until he disappears from the view of the CCTV camera just inside the tunnel. At this point, there was no longer a tightly packed mass of rioters inside the tunnel pressed up against the police line, nor was there evidence of coordinated activity that Mr. Snoots was seemingly joining.



As shown above, the first 8-10 feet of space inside the tunnel has only a handful of rioters after several had turned around and exited. At this point, the "crush" against the officers, who are out of sight of the camera further inside the tunnel, is nothing even remotely similar to what had been the case

three minutes earlier at 3:12:30.



As shown above, within 60 seconds after Mr. Snoots entered the half-empty tunnel, the crowd outside again filled in the open space behind Mr. Snoots and others closer to the police line, locking him into his position close to the front.

In fact, at the time Mr. Snoots entered the tunnel the battle was almost over as the MPD and USCP Officers were quickly gaining the upper hand in pushing the rioters back towards the tunnel entrance – something that was accomplished at approximately 3:19:00 – only 4 minutes after Mr. Snoots first entered.



Between 3:15:20 and 3:19:00, Mr. Snoots did find his way almost to the very front of the group of rioters who remained inside the tunnel when he entered, ending up just behind Frederico Klein. While behind Klein, Mr. Snoots he did put his hands on a police shield being held by Mr. Klein against the line of officers in front of him, and he did lean into Klein with his body weight. During this sequence of events Mr. Snoots was sprayed in the face by OC spray by one of the officers.

As is true of many officers who were sprayed under identical circumstances, Mr. Snoots was momentarily blinded and otherwise incapacitated by the effects of the OC spray – which is exactly the effect that the spray is designed to produce.

It was in the chaos that followed – including the fact that the police had won the battle – that led Officer Fanone to become separated from officers behind him, with rioters getting in between. Defendant Albuquerque Head wrapped his arm around Officer Fanone's neck and pulled him out of the tunnel down into the crowd. Mr. Snoots, being pushed from behind by both rioters turning to leave and the police that were pushing everyone towards the exit, found himself behind and slightly to the right of Officer Fanone. After a few moments, Mr. Snoots put his left hand on the upper back and shoulder on Officer Fanone's right side.

The Government claims in its Sentencing Statement that Mr. Snoots was "helping to push" Officer Fanone out of the tunnel. That is an allegation that goes beyond the Statement of Offense. The video does not establish any pushing in that instance, and Mr. Snoots has no independent recollection of those events other than he recalls being in distress from the pepper spray to his face and not being able to see very well at that moment. In fact, during most of the movement by Head and Officer Fanone towards the opening of the tunnel was backwards – they were both facing towards the officers in the tunnel, their backs to the crowd, and moved backwards until they reached the tunnel entrance.

At 13:18:19, Officer Fanone's helmet first comes into view in the lower right side of the CCTV video – he is still in the police line and he is still facing forward towards the exit.

At 13:18:27, Officer Fanone appears to realize that he was ahead of the police line pushing the rioters, and he rotated his body to his left in an effort to

return.  At that point, Head puts his left arm around Officer Fanone's neck. Together, the two begin backing towards the tunnel exit along with the rest of the rioters as the police line starts to aggressively push everyone in that direction.  Head and Officer Fanone have their backs to the exit almost the entire time, with Officer Fanone finally turning to face towards the exit just as they emerge from the tunnel and into the crowd outside.

Mr. Smoots was behind them at this point, but Mr. Smoots had other rioters to his left and right, as well as behind him, and EVERYONE was being pushed out of the tunnel by the line of police using batons and shields.  Until Officer Fanone turned around to face out of the tunnel, Mr. Snoots could not have placed his hand on Officer Fanone's back so Mr. Snoots could not have been pushing Officer Fanone out into the crowd as claimed by the Government.

Once outside, and while DESCENDING down steps immediately in front of the tunnel entrance surrounded by a chaotic mob, Mr. Snoots – still suffering the effects of being pepper sprayed inside the tunnel -- did reach out and grab the arm of the individual next to him on Mr. Snoots' left.  That is clearly reflected in video evidence, which also shows that the arm he grabbed belonged to Officer Fanone.

As Mr. Snoots stated during the initial hearing to enter a plea of guilty, he has no independent recollection of this sequence of events. He has reviewed the video evidence, he sees himself, and he sees his actions.

The Government makes reference to a television interview Mr. Snoots gave later that afternoon.  Among the first comments he made was "They have tear gassed our ass off the Capitol steps" confirming the fact that he was

sprayed with chemical agent during his encounter with the police on January 6 inside the Lower West Terrace tunnel.

B. <u>Section 3553(a) Factors</u>.

1. <u>Personal Background</u>

The Government seemingly ignores controlling case authority in this Circuit on the question of "extraordinary family circumstances," going so far as to write:

> "His family's needs were not on his mind at the time of his offenses, and *those same needs do not now outweigh or mitigate his criminal conduct*, which weighs heavily in favor of a lengthy term of incarceration."

That is not the case law in this Circuit. In *United States v. Pyce*, 91 F.3d 1462, 1644, (D.C. Cir. 1996), the Circuit Court explained as follows:

> Congress has directed the Sentencing Commission to "assure that the guidelines and policy statements ... reflect the general inappropriateness of considering the ... family ties and responsibilities ... of the defendant." 28 U.S.C. § 994(e). Pursuant to this statutory mandate, the Commission has provided that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6, p.s. The courts of appeals that have considered the issue unanimously agree that this section, by negative implication, permits departures when family circumstances are "extraordinary." See *United States v. Canoy*, 38 F.3d 893, 906 (7th Cir. 1994), and cases cited therein.

> The issue, then, is what constitutes "extraordinary" family ties and responsibilities. At the risk of stating the obvious, we note that the "extraordinary" can be defined only in relation to the "ordinary"...

Mr. Snoots family situation is about as far from "ordinary" as one can get in terms of husband and father's responsibilities to his wife and child. The circumstances are explained in both the Defense Sentencing Statement and the PSR.

Not stated plainly in the Sentencing Statement is the fact that Mr. Snoots' wife – suffering from melanoma -- has now entered hospice care and is not expected to live more than six months.  So, he must not only care for his wife during the few months they have left together, but he must then be the sole caregiver to his adult daughter who is completely dependent on him to provide for her needs resulting from a debilitating condition she developed as an infant.

If would have been better for the Government to have simply not mentioned the subject rather make the risible and legally illiterate point reflected in the quote from the Sentencing Statement above.

2. <u>Specific Deterrence</u>.

It would be hard to imagine a more dishonest mischaracterization of Mr. Snoots first effort to change his plea than that set forth by the Government in its Sentencing Statement.  The Government claims that Mr. Snoots has refused to accept responsibility for his participation in the attack on Officer Fanone, and that "he refused to enter the scheduled guilty plea based on statement of offense he personally signed…".

Mr. Snoots never refused to enter a guilty plea.  The Court declined to accept his guilty plea when he truthfully stated that he had no independent recollection of the sequence of events inside and outside the tunnel, and he was admitting his guilt based on seeing his actions as reflected in the video evidence.  Mr. Snoots was unable to answer – he did not refuse to answer – questions about what he was "thinking" or "intended" at specific moments during the five minutes at issue in this case.

Mr. Snoots admitted he was in the immediate proximity of Officer Fanone.  Mr. Snoots told the Court that he placed his hand on Officer Fanone's back as the Officer was being dragged out of the tunnel by Albuquerque Head.  Mr. Snoots told the Court that he was first behind and then next to Officer Fanone as the mob around Officer Fanone pushed them down the steps.  Mr. Snoots told the Court that he at one point grabbed the right arm of Officer Fanone at the same time Kyle Young was wrestling for control of Officer Fanone's firearm.

In response to the Court's questions about what was in Mr. Snoots mind in those moments – what was he "intending" by his actions – Mr. Snoots was HONEST with the Court.  He said that, given the passage of time, and the chaos of the moment, he could not recall any particular thoughts he might have been thinking in those moments.  The Court approached the question a few different times in a few different ways, but the answers given by Mr. Snoots were the same – if the Court was asking him for his independent recollection of what he was thinking at the moment of the events reflected on the video he could not say what those thoughts were in any honest way.

The prosecutors now criticizing him work for the same Justice Department that routinely puts law enforcement witnesses on the stand – as recently as January 8, 2025, in *United States v. Slaughter*, 22-cr-00354 (RCL) – such as Officer Abdi and Officer Mustafa Ak who both testified that they no have any independent recollection of specific events from January 6.  Both officers were inside the tunnel from 2:42 pm to at least 4:00 pm.  But the only testimony they can now offer is based on their review of video where they see

themselves and describe what takes place. This is the evidence the Justice Department offers as factual evidence to prove a defendant's guilt beyond a reasonable doubt. Yet when the same problems of recall are expressed by Mr. Snoots the Government simply suggests he is lying and claims he's refusing to accept responsibility for his actions.

Similarly, law enforcement officers have testified dozens of times about being assaulted with pepper spray and the after-effects, including how their vision was impaired and they were incapacitated to some degree by the pain for a period of time. Yet when Mr. Snoots says being sprayed inside the tunnel left him unable to see well enough to have full awareness of everything happening around him in the chaos of the tunnel, this claim is treated as knowing falsehoods or minimization.

How could he not be fully aware that he was next to a law enforcement officer who was being restrained and beaten by others in the crowd?

But Mr. Snoots did not assault Officer Fanone. He could have done so easily if he intended Officer Fanone harm. But he didn't assault him, and that failure reflects his thinking even if he doesn't recall a particular moment in time four years later.

It seems that the Justice Department believes pepper spray is only effective in a meaningful way to the eyes and on the skin of law enforcement officers, but should not ever be considered an impediment to defendants such as Mr. Smoots having superhuman awareness on a 360 degree basis of all that is happening around them no matter the chaos of the moment.

3. <u>Unwarranted Sentencing Disparities</u>

Mr. Snoots' extraordinary – extreme to a degree rarely seen in any federal criminal court – makes concerns about sentencing disparities meaningless. There are no comparatives when all the 3553(a) factors are considered.

This Court must, as a matter of human decency, grant a downward variance in this case to Level 11 – Zone B of the Sentencing Guidelines – based on extraordinary family circumstances, and sentence Mr. Snoots to a term of probation up to the maximum.  The Court should impose a term of home confinement as the Court deems is necessary restriction on his liberty for any part of that term of probation pursuant its authority under U.S.S.G. Sec. 5B1.1(a)(2).  This sentence would accomplish all the goals reflected in Sec. 3553(a), while recognizing the extraordinary family circumstances of Mr. Snoots who must care for his wife in her final days and continue to provide for his disabled adult daughter who is completely dependent on him for her daily needs to survive.

Dated: January 15, 2025             Respectfully submitted,

_____
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com